UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

S.M., by and through her Guardian : Hon. Joseph H. Rodriguez
Ad Litem, GABRIELLE MOORE,

     Plaintiffs, : Civil Action No. 13-5702

v. : OPINION

UNITED STATES OF AMERICA, et al., :

     Defendants. :

This matter is before the Court on motion of Defendant the United States of America to dismiss the case for lack of subject matter jurisdiction or, alternatively, for partial summary judgment under the Federal Tort Claims Act ("FTCA") and New Jersey Charitable Immunities Act ("NJCIA'). [Doc. 57.] This Court previously allowed for discovery to be taken to resolve the issues at hand. Plaintiff S.M., by and through her Guardian ad Litem, Gabrielle Moore, has opposed the motion. Oral argument was heard on November 30, 2016, and the record of that proceeding is incorporated here. For the reasons placed on the record that day, and those that follow, the motion will be denied in part and granted in part.

## Background

This is a wrongful birth medical malpractice case that stems from Plaintiff Moore's treatment at CompleteCare Health Network a/k/a

CompleteCare Obstetrics a/k/a Vineland Women's Health Center (hereinafter "CompleteCare") from November 2010 through May 2011. Plaintiff alleges employees of CompleteCare, a federally qualified health center ("FQHC"), deviated from the standard of care when they failed to timely offer Plaintiff proper prenatal screening for Down Syndrome, thereby depriving Plaintiff of necessary information to make a fully informed decision as to whether or not to continue her pregnancy. S.M. was born with Down syndrome on May 17, 2011.

The United States, answering for Defendant, argues that the Court has no jurisdiction to hear this suit because CompeteCare, a corporation with IRS section 501(c)(3) status which serves the underprivileged population of Vineland, qualifies as a "charitable organization" under the New Jersey Charitable Immunity Act ("NJCIA"), N.J. Stat. Ann. § 2A:53A-7(a), and is therefore absolutely or partially immune from liability. Alternatively, Defendant seeks partial summary judgment and asks the Court to find that CompeteCare is a qualified entity under N.J. Stat. Ann. § 2A:53A-8, which caps recovery against "nonprofit hospitals" at $250,000.

Applicable Standards

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) must be granted if the court lacks subject matter jurisdiction to hear a claim. In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). When a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction for the sake of remaining in federal court. Gould Elec., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). The Court applies this standard to the issue of immunity. See Young v. United States, 152 F. Supp. 3d 337, 344 (D.N.J. 2015).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) may involve either a facial challenge to subject matter jurisdiction or a factual challenge to the jurisdictional allegations. Gould Elec., 220 F.3d at 176. If the defendant's attack is facial—i.e., "asserting that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction"—a court must accept all allegations in the complaint as true. Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006). Alternatively, a defendant may "challenge a federal court's jurisdiction by factually attacking the plaintiff's jurisdictional allegations as set forth in the complaint." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891

(3d Cir. 1977). A factual challenge attacks the existence of a court's subject matter jurisdiction apart from any of the pleadings and, when considering such a challenge, a presumption of truthfulness does not attach to a plaintiff's allegations." Id.; see also Martinez v. U.S. Post Office, 875 F. Supp. 1067, 1070 (D.N.J. 1995).

Regarding the applicability of the $250,000 cap on damages, the Court applies a summary judgment standard. "Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v.

4

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

5

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.  That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## Analysis

Because CompleteCare is a FQHC, CompleteCare and its John Doe employees named in this suit are deemed employees of the United States Public Health Service ("PHS") for purposes of the FTCA, 28 U.S.C. §§ 1346(b), 2671-80, and the United States therefore answers for the actions of CompleteCare. See Lomando v. United States, 667 F.3d 363, 371-72 (3d Cir. 2011) ("[A]n action against the United States under the FTCA is the

exclusive remedy for persons alleging 'personal injury, including death, resulting from the performance of medical . . . or related functions' by Public Health Service employees acting within the scope of their employment.' 42 U.S.C. § 233(a); see also 42 U.S.C. § 233(g)(1)(A) (reiterating subsection 233(a)'s exclusivity clause)."). As such, "the United States is entitled to assert 'any defenses available to a similarly-placed private employer answering for the alleged torts of its employee.'" Dupont v. United States, --- F. Supp. 3d ---, No. 15-3752, 2016 WL 3457150, at *5 (D.N.J. June 23, 2016) (quoting Lomando, 667 F.3d at 376). One such defense may be found in the NJCIA, enacted to protect against the diversion of charitable funds from the purpose for which they were donated, to encourage private philanthropic activity to ensure the continued provision of services that benefit the general welfare, and to relieve the government of the burden of providing those services. Ryan v. Holy Trinity Evangelical Church, 815 A.2d 419, 425-26 (N.J. 2003).

The NJCIA bars negligence claims against a nonprofit corporation organized exclusively for religious, charitable, or educational purposes. It provides, in pertinent part:

> No nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to

7

> respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association.
>
> Nothing in this subsection shall be deemed to grant immunity to any health care provider, in the practice of his profession, who is a compensated employee, agent or servant of any nonprofit corporation, society, or association organized exclusively for religious, charitable or educational purposes.

N.J. Stat. Ann. § 2A:53A-7(a). That is, the NJCIA provides complete immunity to an entity from tort liability when it (1) was formed as a non-profit corporation, society, or association; (2) is organized exclusively for religious, charitable, or educational purposes; and (3) was advancing those purposes "at the time of the injury to plaintiff who was then a beneficiary of the charitable works." Bieker v. Cmty. House of Moorestown, 177 A.2d 37, 42 (N.J. 2001). The Act is "deemed to be remedial and shall be liberally construed so as to afford immunity to the said corporations, societies and associations from liability as provided herein in furtherance of the public policy for the protection of nonprofit corporations, societies and associations organized for religious, charitable, educational or hospital purposes." N.J. Stat. Ann. § 2A:53A-10.

"Although the overarching character of all three categories [of N.J. Stat. Ann. § 2A:53A-7(a)] is eleemosynary, they are actually quite distinct. Two are specific as to subject matter (educational and religious), and one is a generic catchall term (charitable). Both 'educational' and 'religious' have a limited and commonly understood meaning. On the contrary, 'charitable' is a more complex notion that defies precise definition." Ryan, 815 A.2d at 424-25. When a charitable purpose is claimed, therefore, the court must conduct a factual analysis beyond the benevolent acts of "the entity seeking to clothe itself in the veil of charitable immunity to discover its aims, its origins, and its method of operation in order to determine whether its dominant motive is charity or some other form of enterprise." Parker v. St. Stephen's Urban Dev. Corp., 579 A.2d 360, 364 (N.J. Super. Ct. App. Div. 1990) (also recognizing that an entity's non-profit and/or tax-exempt status is irrelevant to the determination of whether that entity is organized exclusively for a charitable purpose). "Courts conducting this inquiry have looked to an organization's funding, charter, daily operations, relationships to other entities, and the extent to which an organization lessens a burden on the government." Nazzaro v. United States, 304 F. Supp. 2d 605, 611 (D.N.J. 2004).

In addition to the absolute immunity discussed, the NJCIA caps the prospective liability of a nonprofit hospital "organized exclusively for hospital purposes" at $250,000.

> Notwithstanding the provisions of [N.J. Stat. Ann. § 2A:53A–7], any nonprofit corporation, society or association organized exclusively for hospital purposes shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such corporation, society or association or of its agents or servants to an amount not exceeding $250,000, together with interest and costs of such suit[.]

N.J. Stat. Ann. § 2A:53A-8. Accordingly, "[b]y the plain language of N.J. Stat. Ann. § 2A:53A–7 and –8, a hospital is subject to limited liability under section 8 if it is formed as a nonprofit corporation, society, or association, is organized exclusively for hospital purposes, was promoting those objectives and purposes at the time the plaintiff was injured, and the plaintiff was a beneficiary of the activities of the hospital." Kuchera v. Jersey Shore Family Health Ctr., 111 A.3d 84, 90 (N.J. 2015) (also noting, at 92, that "hospitals now provide comprehensive services beyond acute inpatient care, and our conception of 'hospital purposes' needs to expand to reflect the many health-related pursuits of the modern hospital").

"The most prominent distinction between nonprofit entities organized exclusively for charitable, religious, or educational purposes and nonprofits organized exclusively for hospital purposes is that the former are

10

immune from liability while the latter are subject to liability for negligence, albeit with a cap on its damages." Kuchera, 111 A.3d at 89. "Put another way, if a nonprofit is organized 'exclusively for hospital purposes,' then no absolute immunity can apply. Accordingly, if this Court determines that [CompleteCare] is organized exclusively for hospital purposes, then the jurisdictional inquiry is concluded, even without determining the charitable status of [CompleteCare]." Young, 152 F. Supp. 3d at 347.

Having thoroughly reviewed the record in this case, the Court is satisfied that CompleteCare is a nonprofit entity that is organized exclusively for hospital purposes, but its method of operation does not indicate that its dominant motive is charity. The majority of CompleteCare's funding comes from government assistance, insurance, and patients. As such, immunity would not apply to serve the purposes underlying common law. See Abdallah v. Occupational Ctr. of Hudson Cty., Inc., 798 A.2d 131, 134 (N.J. Super. Ct. App. Div. 2002) ("[T]raditional analysis must take into account the organization's source of funds as a critical element of charitable status.").

> CompleteCare's Articles of Incorporation provide the following:
>
> The charitable purposes to which the Corporation shall be devoted are to promote the general health of the public, to provide health care and related services to the public, to receive grants and aid for the provision of health care and related

>services, to contract with hospitals, professionals and other medical service organizations for the provision of health care and related services to the public, and to conduct health education activities for the public.

Edwards Decl. ¶ 5 and Ex. B. Its mission statement is contained in the Bylaws:

>Our mission is to provide the most accessible, culturally competent and affordable highest quality health services to break down barriers to health care. And to work to prevent illness and injury among those most at risk by extending health promotion and treatment to schools, neighborhoods and work places in the communities we serve.

Edwards Decl. ¶ 7 and Ex. C; see also Paul Decl. ¶ 3. It appears that the Bylaws effective during 2010 and 2011 are similar. While CompleteCare argues that this language evidences its charitable purpose, the Court finds, instead, that it documents that CompleteCare is organized for hospital purposes. This determination is informed by the Kuchera Court:

>The modern hospital in New Jersey . . . provides medical care to those who can pay for the care and to those who cannot. In fact, every acute care hospital in this State is required to provide care to anyone who seeks care without regard to the ability to pay. N.J. Stat. Ann. § 26:2H–18.64. The provision of charity care is a core function of a hospital.

111 A.3d at 93.

>CompleteCare's daily operations also reflect those of a hospital:

>CompleteCare provides a variety of health services to its patients, including primary care (family medicine, pediatrics, internal medicine, obstetrics and gynecology, geriatrics); on-site

12

specialty care (podiatry, ophthalmology, optometry, cardiology, dermatology, and other subspecialties); preventive care (family planning, well-child services, dental services, and nutrition), related support and enabling health services, and additional health services as appropriate and necessary. Edwards Decl. ¶ 9; Edwards Dep. 20:23 to 21:7; Paul Decl., Exs. A and B. CompleteCare either provides these services directly or through established written arrangements and referrals. Edwards Decl. ¶ 6.

As an FQHC, CompleteCare also offers a variety of health-related services to enhance patient outcomes: financial counseling (enrollment assistance in Medicaid and New Jersey Charity Care); transportation to/from dental services for children through the Smile Smart Program; community outreach, including health screenings and health education; a low-cost pharmacy program (340B); and several school programs, including pregnancy prevention programs, health youth development, learning support, substance abuse/counseling, mental health counseling, and employment counseling. Paul Decl. ¶ 5 and Exs. A and B; Paul Dep. 115:1 to 120:24; 122:11 to 126:3.

Similar to traditional hospital functions, CompleteCare provides medical coverage for its patient population 24 hours a day, 7 days a week. Edwards Decl. ¶ 10. In 2010 and 2011, CompleteCare provided in-patient admissions for its patients to the local regional hospitals South Jersey Hospital, Inc. (now Inspira Health Network) and Burdette Tomlin Health System (now Cape Regional). Edwards Dep. 185:9 to 187:2 and Exs. Edwards-4, -5.

Lastly, CompleteCare trains and supervises medical residents. Edwards Dep. 189:21 to 190:2 and Ex. Edwards-17. Effective July 1, 2011, CompleteCare and South Jersey Hospital (now Inspira) entered into a contractual agreement to allow South Jersey Hospital's residents to rotate through CompleteCare's facilities. Edwards Dep. 187:12 to 188:14 and Ex. Edwards-17 (Agreement). The residents are primarily

>assigned to CompleteCare obstetrical sites. Edwards Dep. 189:3-10.

(Def. Br. p. 38-40.)

Although Plaintiff argues that CompleteCare should not be afforded limited liability status, it would be "error to confine 'hospital purposes' to the 'vintage conception of a hospital as a facility providing a site for physicians to provide acute and continuous inpatient care for their patients. Rather, to effect the legislative mandate that the [NJ]CIA should be liberally construed to effectuate its purpose, we focus on the many medical pursuits of a modern hospital in New Jersey.'" Young, 152 F. Supp. 3d at 349 (quoting Kuchera, 111 A.3d at 92). Rather, "The modern hospital is now a place where members of the community not only seek emergency services but also preventative services, therapy, educational programs, and counseling. . . . [H]ospitals now provide comprehensive services beyond acute inpatient care, and our conception of 'hospital purposes' needs to expand to reflect the many health-related pursuits of the modern hospital." Kuchera, 111 A.3d at 92.

Finally, regarding Plaintiff's argument that CompleteCare should not be regarded as a nonprofit entity under the NJCIA, the Court finds that CompleteCare is organized as a nonprofit corporation and has been granted nonprofit status by the IRS. See also Young v. United States, --- F.3d ---,

14

No. 12-cv-5215, 2016 WL 3129613, at *5 (D.N.J. June 2, 2016) ("There is no dispute that CAMcare is tax exempt under I.R.C. § 501(c)(3) and classified as a publicly supported organization under I.R.C. §§ 509(a)(1) and 170(b)(1)(A)(vi). Additionally, CAMcare's governing documents refer to its 501(c)(3) status, explain that it is organized as a non-profit corporation, and further provide that its sources of income will be charitable contributions, government and charitable grants, and fees for services provided. As such, CAMcare is a "non-profit corporation, society or association" within the meaning of the NJCIA.").

## Conclusion

For these reasons, the Court will grant partial summary judgment in Defendant's favor, as it finds that CompleteCare meets the criteria of N.J. Stat. Ann. § 2A:53A-8 and therefore is entitled to the statutory limitation on damages under the NJCIA. An Order will accompany this Opinion.


Dated: December 20, 2016            /s/ Joseph H. Rodriguez
                                   JOSEPH H. RODRIGUEZ
                                         U.S.D.J.